IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| KEVIN JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO.  5:10-CV-293 (MTT) |
| VS. | : | |
| | : | |
| JEFF PETTY, *et al.,* | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

## **RECOMMENDATION**

Before the Court is a Motion to Dismiss filed by Defendants Petty, Duncan, Allen, and Davidson (Doc. 17) and a separate Motion to Dismiss filed by Defendant Nunn (Doc. 27).  In these motions, Defendants contend that, pursuant to the provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's claims about excessive force and infringements upon his right to practice Islam must be dismissed as they seek money damages without alleging substantial physical injury. 42 U.S.C. § 1997e(a),   For the reasons that follow, **IT IS RECOMMENDED** that Defendants' Motions be **GRANTED** in part and **DENIED** in part.

FACTUAL AND PROCEDURAL HISTORY

As indicated above, this action involves claims of excessive force and violations of Plaintiff's right to practice his chosen religion.  On Motions to Dismiss, all well-pleaded facts in the Complaint are accepted as true, and construed in the light most favorable to the Plaintiff.  Because Plaintiff is proceeding *pro se*, his pleadings are liberally construed.

According to the Complaint, the facts of this case are as follows:  On March 30, 2009, Plaintiff Kevin Jones was arrested and then brought to the Wilkinson County Jail.  The next morning, Plaintiff, an adherent of Islam, was given a breakfast tray that included pork.  After

notifying a correctional officer of the situation and confirming that he had explained his religious dietary restrictions to the booking officer at the time of his intake the night before, the officer responded by saying that nothing could be done.

On April 16, 2009, Plaintiff was placed in the hole (segregation). The following day, he was given breakfast and lunch trays containing pork. Though he notified the officer on duty, he received no response.

On April 20, 2009, Plaintiff was transferred to the Baldwin County Jail where he met Rodney Collins, another Islamic inmate. Later, Plaintiff and Collins met in the day room and the two men began praying using their towels as prayer rugs. While they were praying, Plaintiff noticed that Defendant Petty and jail Sgt. Simmons were watching from the control room. Later that day, Sgt. Simmons announced a new policy limiting the items inmates could bring into the day room to reading materials and games. Thereafter, Plaintiff continued to pray on the day room floor until he contracted an eye infection. Then, after making several requests, Jail Cpt. Butch authorized him to use a towel as a prayer rug.

On September 12, 2009, Defendant Davidson entered Plaintiff's cell and directed him to move into the day room. Because he was in prayer at the time of this request, Plaintiff admits that he did not respond. As a result, Defendant Allen came to the cell and ordered Plaintiff to get against the wall. Plaintiff was then handcuffed, removed from the cell, dragged down a flight of stairs, and taken outside of the dormitory. Once outside the dorm, Defendant Allen slammed Plaintiff's face into a glass panel. Plaintiff was then put in the hole. While there, Plaintiff maintains that he asked for permission to practice Ramadan. According to Plaintiff, this request was forwarded to Defendant Petty who never answered.

notifying a correctional officer of the situation and confirming that he had explained his religious dietary restrictions to the booking officer at the time of his intake the night before, the officer responded by saying that nothing could be done.

On April 16, 2009, Plaintiff was placed in the hole (segregation). The following day, he was given breakfast and lunch trays containing pork. Though he notified the officer on duty, he received no response.

On April 20, 2009, Plaintiff was transferred to the Baldwin County Jail where he met Rodney Collins, another Islamic inmate. Later, Plaintiff and Collins met in the day room and the two men began praying using their towels as prayer rugs. While they were praying, Plaintiff noticed that Defendant Petty and jail Sgt. Simmons were watching from the control room. Later that day, Sgt. Simmons announced a new policy limiting the items inmates could bring into the day room to reading materials and games. Thereafter, Plaintiff continued to pray on the day room floor until he contracted an eye infection. Then, after making several requests, Jail Cpt. Butch authorized him to use a towel as a prayer rug.

On September 12, 2009, Defendant Davidson entered Plaintiff's cell and directed him to move into the day room. Because he was in prayer at the time of this request, Plaintiff admits that he did not respond. As a result, Defendant Allen came to the cell and ordered Plaintiff to get against the wall. Plaintiff was then handcuffed, removed from the cell, dragged down a flight of stairs, and taken outside of the dormitory. Once outside the dorm, Defendant Allen slammed Plaintiff's face into a glass panel. Plaintiff was then put in the hole. While there, Plaintiff maintains that he asked for permission to practice Ramadan. According to Plaintiff, this request was forwarded to Defendant Petty who never answered.

After being released from the hole, Plaintiff asked permission to receive a chess set and prayer rug that had been brought to the jail by his family.  A few days later, Plaintiff was given the chess set.  Then, following repeated inquiries about the prayer rug, Plaintiff was told by Defendant Duncan that Defendant Petty had approved his request.  After weeks of additional inquiries, Plaintiff was informed that his brother needed to come pickup the prayer rug or it would be destroyed.

Plaintiff then wrote to jail officials and to the Baldwin County Prosecutor's Office in an effort to have Defendants Allen and Davidson prosecuted for assault.  On October 10, 2009, Defendants Allen and Davidson came to Plaintiff's dormitory, announced that all towels had to be washed, and proceeded to collect all towels including the one Plaintiff had been using as a prayer rug.  Once laundered, these Defendants returned and began passing out the towels.  After receiving one towel, Plaintiff asked for his "prayer rug" towel.  In response, he was informed that the towels were the property of Baldwin County and that, as such, each inmate could have only one.  In response, but before being transferred to the Jones County Jail, Plaintiff wrote another letter to the Baldwin County prosecutor's office concerning the alleged assault by Defendants Allen and Davidson.

On December 14, 2009, Plaintiff returned to the Wilkinson County Jail to appear in court.  There, he was given a breakfast tray containing pork.  After informing a jailer that he did not eat pork, the jailer began to exchange the tray.  Before the jailer was able to do so, Plaintiff claims that Defendant Nunn intervened and explained that he could eat the pork tray or nothing at all.[1]

---

[1] In his original Complaint, Plaintiff alleged that Defendant Petty is the one that intervened and prevented his tray from being exchanged. See Doc.1, p.7. Plaintiff later amended his Complaint by clarifying that it was Defendant Nunn, not Defendant Petty. Doc.13, p.1.

Based on the above, Plaintiff maintains that his rights under the First and Eighth Amendments were violated.[2] Moreover, because he suffered pain, suffering, stress, depression, and mental anguish, he demands injunctive relief as well as compensatory and punitive damages.

Upon receipt, Plaintiff's Complaint was reviewed by the Court in accordance with the provisions of 28 U.S.C. § 1915A. Doc. 8. In its order adopting the findings of this review, and after dismissing Plaintiff's claims against Sheriff Bill Massee and Sheriff Richard Chapman as well as Plaintiff's requests for injunctive relief, the District Court allowed the claims against Defendants Nunn, Petty, Duncan, Allen, and Davidson to proceed. Doc.15. In response, Defendants filed the instant Motions to Dismiss. In support, and in reliance upon the provisions of the PLRA, all Defendants argue that, because Plaintiff's claims seek money damages but do not include allegations of substantial physical injury, they must be dismissed.[3]

## DISCUSSION

### Plaintiff's Claims of Excessive Force

As indicated above, Defendants' Motions to Dismiss Plaintiff's excessive force claims are based solely upon his purported failure to allege substantial physical injury. Specifically, Defendants argue that, absent such allegations, the claims are barred by the PLRA and must, therefore, be dismissed. The PLRA provides that "No federal civil action may be brought by a

---

[2] Plaintiff's Complaint also references the Fourteenth Amendment, however, the record in this case indicates that his invocation of the Fourteenth Amendment was merely a means of identifying the fact that it is the Fourteenth Amendment's incorporation of the First and Eighth Amendments' protections (which only apply against the Federal Government) that renders those protections applicable against the State Government and hence, applicable herein.

[3] Review of instant Motions to Dismiss indicates that, at the time both were filed, service had not yet been ordered as to Defendant Nunn. See Doc. 18. Since that time, a USM285 Process Receipt and Return has been issued for (Doc.25) and executed by Defendant Nunn (Doc. 33). Consequently, Defendant Nunn's lack of service of process argument set forth in his Motion to Dismiss is moot.

prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Plaintiff has alleged that he was physically injured as a result of the alleged use of force. As noted above, Plaintiff's excessive force claims stem from an incident in the Baldwin County Jail that occurred on September 12, 2009. Specifically, Plaintiff states that, while handcuffed, Defendants Allen and Davidson dragged him down a flight of stairs and slammed him face first into a glass panel. Plaintiff later added that, as a result, he suffered facial swelling and a permanent limp. Doc.20, p.1. Because Plaintiff's claim of excessive force includes an allegation of actual physical injury, **IT IS RECOMMENDED** that Defendants' requests for dismissal of these claims be **DENIED**.

Plaintiff's First Amendment Free Exercise of Religion Claims

Defendants also move for dismissal of Plaintiff's Free Exercise claims due to Plaintiff's failure to allege physical injury. Although Plaintiff does not contend that he was physically injured by the alleged denial of his right to exercise his religion, his claim is not completely barred. In the absence of physical injury, the PLRA bars only requests for compensatory or punitive damages. 42 U.S.C. § 1997e(e); Al-Amin v. Smith, 637 F.3d 1192, 1197-1198 (11th Cir. 2011). To the extent that the claims also include requests for declaratory relief, injunctive relief, or nominal damages, Section 1997e(e) of the PLRA is inapplicable.

In his Complaint, Plaintiff requests compensatory damages, punitive damages, nominal damages, and injunctive relief.[4] Plaintiff's claims for injunctive relief have since been dismissed. See Doc. 8 and Doc. 15. In accordance with Section 1997e(e), his claims for compensatory and

---

[4] Plaintiff's request for nominal damages appears in his response to Defendant Nunn's Motion to Dismiss. Doc. 29, p. 3. Given the procedural posture of this case, and in keeping with the Court's obligation to liberally construe pro se pleadings, Plaintiff's request is considered timely.

punitive damages are precluded by the PLRA and, as such, must also be dismissed. Nevertheless, to the extent that these claims include a request for nominal damages, they must be allowed to proceed.

## CONCLUSION

In accordance with the above, **IT IS RECOMMENDED** that the Defendant's Motions to Dismiss be **GRANTED** in part and **DENIED** in part. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 6th day of September, 2011.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge