**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **KEVIN JONES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:10-CV-293 (MTT)** |
| | : | |
| **JEFF PETTY,** *et al.*, | : | |
| | : | **Proceedings Under 42 U.S.C. § 1983** |
| **Defendants.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

## RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Jeff Petty, Chance Allen, Officer Davidson, Montien R. Duncan, and Wesley Nunn. Doc. 52. The record shows that Plaintiff Kevin Jones failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) regarding two of his claims. As to the remaining claims, Plaintiff has failed to demonstrate a genuine issue of material fact and Defendants have shown that they are entitled to judgment as a matter of law. Accordingly, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL HISTORY

On August 9, 2010, Plaintiff Kevin Jones, proceeding *pro se*, filed the above-styled action against Defendants Bill Massee, Richard Chapman, Jeff Petty, Chance Allen, Officer Davidson, Montien R. Duncan, and Wesley Nunn. Doc. 1. Plaintiff's Complaint alleges various violations of Plaintiff's constitutional rights that occurred while Plaintiff was incarcerated at the Baldwin County Jail (BCJ) and Wilkinson County Jail (WCJ). The Complaint includes claims of denial of free exercise of religion under the First Amendment and a claim of excessive force

1

claim under the Eight Amendment.[1]   Upon receipt, Plaintiff's Complaint was reviewed for frivolity in accordance with 28 U.S.C. § 1915A. Doc. 8.  After dismissing Plaintiff's claims against Defendants Massee and Chapman as well as Plaintiff's claims for injunctive relief, the Court allowed Plaintiff's claims against Defendants Petty, Duncan, Davidson, Allen, and Nunn to proceed. Doc. 15.

On November 29, 2010, Defendants Petty, Duncan, Davidson, and Allen filed a Motion to Dismiss (Doc. 17), and Defendant Nunn filed a separate Motion to Dismiss on February 4, 2011 (Doc. 27). On September 29, 2011, the Court issued an order dismissing Plaintiff's First Amendment claims for compensatory and punitive damages, but allowed Plaintiff's First Amendment claims for nominal damages as well as Plaintiff's Eight Amendment claim to proceed. Doc. 45. On October 15, 2011, Defendants filed the instant Motion for Summary Judgment. Doc. 52.

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the facts of the case are as follows: Plaintiff is Muslim and has been practicing Islam since he was approximately sixteen years old. Pl.'s Dep. at 15 (Doc. 59). On April 20, 2009, Plaintiff entered the BCJ following a medical transfer. Pl.'s Compl. (Doc. 1). Upon his arrival at BCJ, Plaintiff informed the booking officer that he was Muslim and that he was allergic to pork.[2] Pl.'s Dep. at 17-18 (Doc. 59).

At the BCJ, Plaintiff and another inmate began praying in the day room using their towels as prayer rugs. Pl.'s Comp. (Doc. 1). Soon thereafter, Sgt. Simmons announced a policy limiting the items that inmates could bring into the dayroom. Id. Plaintiff continued to pray on the

---

[1] Because Plaintiff was a pre-trial detainee at the time of the alleged violations, his First and Eighth Amendment claims against the State are incorporated through the Fourteenth Amendment. See Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1268 (11th Cir. 2005)

[2] Plaintiff is not in fact allergic to pork. Because Muslims are not allowed to eat pork, Plaintiff informed the BCJ that he was allergic to pork to ensure that he was not served pork. Pl.'s Dep. at 18 (Doc. 59).

dayroom floor until he contracted an eye infection. Id. Then, after making several requests, Officer Butch authorized Plaintiff to use a towel as a prayer rug in the dayroom. Id. Plaintiff labeled his towel "prayer rug" with a marker and was able to use his towel while praying in the dayroom. Id.

On August 19, 2009, Plaintiff wrote Defendant Petty requesting that he be allowed to practice Ramadan, which requires Muslims to fast from sunrise until sunset for a thirty-day period. Def. Exhibit 3 (Doc. 52-2). After researching Ramadan online, Defendant Petty determined that Plaintiff should be allowed to skip two meals during the day and received a sack lunch at night. Petty Aff. (Doc. 52-2). Petty ordered that Plaintiff continue to receive his medications as regularly scheduled and that Plaintiff receive a sack lunch at night. Id. Plaintiff states that while he was in the "hole" during Ramadan, the meal officer continued to bring his meals at the regularly scheduled times.[3] Pl.'s Dep. at 41 (Doc. 59). Plaintiff claims that he was therefore unable to practice Ramadan. Id. Plaintiff states that he never received a response from Defendant Petty regarding his request that he be allowed to practice Ramadan. Id.

Plaintiff also asserts that Defendant Petty authorized Plaintiff to receive a prayer rug and chess set from Plaintiff's brother, but that Defendant Duncan, who was in charge of receiving items left for inmates, refused to give Plaintiff the prayer rug. Pl.'s Compl. (Doc. 1). Defendant Petty testifies that Plaintiff was not authorized to receive the prayer rug, and that a prayer rug was not an approved property item for any inmate. Petty Aff. (Doc. 52-2). As such, Plaintiff was not allowed the prayer rug, and the prayer rug was returned to Plaintiff's brother. Pl.'s Dep. at 31 (Doc. 59). Plaintiff also complains that he was only able to receive one religious book at the BCJ. Id. at 26.

---

[3] Plaintiff was placed in disciplinary isolation for having cursed at a nurse. Pl.'s Dep. at 38 (Doc. 59).

On September 12, 2009, Defendant Davidson entered Plaintiff's cell and instructed Plaintiff to move into the dayroom. Id. Plaintiff, who was praying at the time, did not respond to Defendant's request. Id. Plaintiff believed at the time that he was not allowed to stop in the middle of a prayer, but has since learned that taking a break during a prayer is acceptable. Pl.'s Dep. at 67 (Doc. 59). Plaintiff was instructed numerous times to exit the cell, but Plaintiff continued to ignore Defendant's instructions. Id. at 68. Plaintiff eventually stood up and was hand-cuffed behind his back. Id. at 69. Defendant Allen then escorted Plaintiff down a flight of stairs. Id. Plaintiff states that he was dragged down the stairs, but that his feet never left the ground. Id. at 70. Defendant Allen slammed Plaintiff into the wall and pinned Plaintiff against the wall. Id. at 72, 76. Defendant Davidson then jerked Plaintiff's arms and shoulders up while Plaintiff was still hand-cuffed. Id. at 76. Plaintiff states that his shoulder and knee were injured as a result of Defendants' use of force. Id. at 80. Plaintiff never sought medical treatment following the incident, however. Id. at 63.

On October 10, 2010, while Plaintiff was still using a towel in lieu of a prayer rug, Defendant Allen entered Plaintiff's cell and demanded Plaintiff's towel. Id. at 54. Defendant Allen informed Plaintiff that it was time for all towels to be washed. Id. Plaintiff reluctantly gave up his towel and asked Defendant Allen to return the same towel marked "prayer rug" when the towels were redistributed. Id. at 55. When Defendant Allen returned to redistribute the towels, Defendant Allen refused to give Plaintiff the towel marked "prayer rug." Id. The towel marked "prayer rug" was given to an inmate four cells down from Plaintiff. Id. Plaintiff was able to trade towels with that inmate to get back the towel marked "prayer rug." Id. at 55-56. Plaintiff continued to use the prayer towel in the dayroom and was not prevented from praying despite the

incident. Id. at 56-58. Shortly thereafter, Plaintiff was transferred to the Jones County Jail. Id. at 57.

On December 14, 2009, Plaintiff entered the WCJ to appear in court. Pl.'s Compl. (Doc. 1). There, he was given a breakfast tray containing grits, eggs, toast, and bacon. Pl.'s Dep. at 96 (Doc. 59). After informing a jailer that he did not eat pork, Defendant Nunn intervened and told Plaintiff that he could eat the food on that tray or nothing at all. Id. Plaintiff admits that he did not have any discussion with Defendant Nunn that day nor did Plaintiff ever inform Defendant Nunn that he was Muslim. Id. at 101, 103.

## LEGAL STANDARD

In accordance with Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Cleotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." Id. at 324-26. If the evidence presented by the non-movant is "not

significantly probative" or is "merely colorable," then summary judgment must be granted. <u>Anderson</u>, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

DISCUSSION

Plaintiff alleges that Defendants Petty, Duncan, Allen, and Nunn prevented Plaintiff from being able to practice his religion freely and that Defendants Allen and Davidson applied excessive force against Plaintiff, all in violation of Plaintiff's constitutional rights. Specifically, Plaintiff asserts the following claims: (1) that Defendant Petty prevented him from practicing Ramadan in violation of the First Amendment; (2) that Defendant Duncan prevented him from obtaining a prayer rug and religious books in violation of the First Amendment; (3) that Defendant Allen prevented him from obtaining his prayer towel in violation of the First Amendment; (5) that Defendants Allen and Davidson applied excessive force against him in violation of the Eighth Amendment; and (6) that Defendant Nunn prevented Plaintiff from obtaining a pork-free breakfast tray in violation of the First Amendment.

The evidence in the record of the case shows that Plaintiff failed to properly exhaust his administrative remedies regarding his Ramadan and excessive force claims. Additionally, Plaintiff has failed to demonstrate a genuine issue of material fact and Defendants are entitled to judgment as a matter of law regarding Plaintiff's remaining claims.

<u>Failure to exhaust administrative remedies</u>

The evidence shows that Plaintiff failed to file grievances regarding his claim that Defendant Petty prevented him from fasting during Ramadan and his claim that Defendants Allen and Davidson applied excessive force against him. Because Plaintiff did not file a

grievance on either occasion, Plaintiff failed to exhaust his administrative remedies regarding those claims. As such, those claims must be dismissed.

The Prison Litigation Reform Act (PLRA) mandates that an incarcerated plaintiff must exhaust all of his available administrative remedies before bringing any action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). Further, the PLRA requires the proper exhaustion of administrative remedies, and a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective administrative grievance. See Woodford v. Ngo, 548 U.S. 81 (2006). Claims that are not properly exhausted must be dismissed. Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999). The Eleventh Circuit has made it clear that the exhaustion of available administrative remedies is a precursor to a prisoner's filing a civil rights action, even when the administrative procedures set forth by the prison are futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998).

Where a defendant raises the affirmative defense of failure to exhaust administrative remedies, the review of the motion involves a two-step process. See Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). The court first looks to the factual allegations in the motion seeking dismissal as well as those in the plaintiff's response. If they conflict, the court takes the plaintiff's version of the facts as true. Id. at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. If the compliant is not subject to dismissal under the plaintiff's version of the facts, the court must proceed to the second step, making specific findings of fact to resolve the disputed factual issues related to exhaustion. Id. At the second stage of the analysis, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. Id.

Because there is a dispute between the parties regarding Plaintiff's grievances, this case must be resolved at the second stage of the <u>Turner</u> analysis. Plaintiff asserts that he filed a grievance regarding his Ramadan claim and that he did not have the ability to file a grievance regarding his excessive force claim because he was immediately transferred to the Jones County Jail. The evidence shows, however, that the BCJ had a grievance procedure in place, that Plaintiff was aware of the BCJ's grievance procedure, and that Plaintiff failed to file a grievance regarding these claims.

In support of his affidavit, Defendant Petty has attached the BCJ's grievance procedure. Section 1.2 under the heading titled "Grievances" describes the BCJ's inmate grievance procedure. Section 1.2.1 sates "[w]hen you feel that you have a legitimate complaint, the first step is to file a grievance using the inmate grievance form within five (5) days of the date of the incident, which has given rise to the complaint." Def. Exhibit 1 (Doc. 52-2). Plaintiff testified that although he did not receive an inmate handbook, he was well aware of the grievance procedure at the BCJ. Pl.'s Dep. at 117 (Doc. 59). Plaintiff's knowledge of the grievance procedure is further supported by Plaintiff's properly filed grievances regarding other incidents submitted by both Plaintiff and Defendant. Doc. 66; Def. Exhibit 2 (Doc. 52-2).

The evidence in the record supports a finding that Plaintiff did not file a grievance regarding his Ramadan claim against Defendant Petty. Plaintiff gives contradicting testimony regarding whether he grieved his Ramadan claim. In his response to the instant motion, Plaintiff makes the general assertion that he filed grievances regarding his claims while at the BCJ. Doc. 61. When discussing the issue of exhaustion during his deposition, Plaintiff also states that he filed a grievance regarding his Ramadan claim. Pl.'s Dep. at 116 (Doc. 59). However, when discussing the events surrounding the Ramadan claim during his deposition, Plaintiff

acknowledges that he did not file a grievance. Plaintiff testifies that he wrote Defendant Petty prior to the start of Ramadan requesting accommodations. Id. at 44. When asked if he ever wrote to anyone else or wrote anything else regarding Ramadan, Plaintiff responded "no." Id. at 46. Additionally, Defendant Petty testifies that the BCJ has no record of a grievance regarding Plaintiff's Ramadan claim, and Plaintiff did not submit a copy of the grievance regarding his Ramadan claim with the other grievances that he submitted to the Court.

The record also supports a finding that Plaintiff did not file a grievance regarding his excessive force claim against Defendants Allen and Davidson even though Plaintiff had an opportunity to do so. Plaintiff states that he wrote Baldwin County District Attorney Fred Bright in an attempt to file criminal charges against Defendants Allen and Davidson, but that he was transferred to the Jones County Jail before he was able to pursue a grievance regarding the incident. Doc. 61. Plaintiff's allegation that he was transferred to the Jones County Jail before he had the opportunity to file a grievance, however, is not supported by the record. The alleged use of excessive force occurred on September 12, 2009. Pl.'s Dep. at 62 (Doc. 59). Pursuant to the BCJ's grievance procedure, Plaintiff had five days, or until September 17, 2009, to file a grievance. See Def. Exhibit 1 (Doc. 52-2). Although Plaintiff contends that he was transferred before he could file a grievance, Plaintiff states in his deposition that he was transferred to the Jones County Jail on October 12, 2009. Pl's Dep. at 54-57 (Doc. 59).

Because the record supports a finding that Plaintiff did not file grievances at the BCJ regarding his Ramadan and excessive force claims, Plaintiff did not properly exhaust his administrative remedies regarding those claims. As such, those claims must be dismissed.

<u>Free Exercise of Religion Claims</u>

Plaintiff has failed to establish that Defendants Duncan, Allen, and Nunn violated his constitutional right to practice his religion while Plaintiff was incarcerated at the Baldwin and Wilkinson County jails. Although Plaintiff was not allowed to have a prayer rug while incarcerated at the BCJ, the BCJ accommodated Plaintiff by allowing Plaintiff to pray using a prayer towel. Additionally, Plaintiff has failed to show that Defendant Nunn violated his constitutional rights by failing to provide Plaintiff with a pork-free breakfast tray because Defendant was not aware of Plaintiff's religious beliefs.

The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…." U.S. CONST. AMEND. I. An inmate does not give up all of his First Amendment rights, including his right to practice his religion, simply because he is incarcerated. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342,  348 (1987). As such, an inmate must be given a reasonable opportunity to "exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). A jail or prison may implement rules that infringe on an inmate's First Amendment rights only to the extent that the rule is necessary to protect a legitimate governmental interest and the rule is no greater than necessary to protect those interests. <u>Procunier v. Martinez</u>, 416 U.S. 396, 413-14 (1974).

To determine whether a prison has violated an inmate's right to the free exercise of religion, courts must make two primary inquiries: (1) is the inmate sincere in his asserted religious beliefs; and, (2) is any rule or action that impedes the free exercise of religion reasonably related to legitimate penological interests. <u>Turner v. Safely</u>, 482 U.S. 78, 89-91

(1987). Such governmental interests include the need to maintain institutional order and security. Bell v. Wolfish, 441 U.S. 520, 550-51 (1979).

Courts must consider different factors when determining whether the regulation or action is reasonably related to a penological interest. These factors include: (1) whether there is a rational relationship between the government action and the legitimate governmental interest being asserted; (2) whether the prison has provided an accommodation to allow the inmate to exercise his right; (3) the accommodation's impact on the prison system; and (4) whether there are other alternatives that could better accommodate the right and continue to satisfy the governmental interest. Turner, 482 U.S. at 89-91; Brunskill v. Boyd, 141 Fed. Appx. 771, 773-74 (11th Cir. 2005).

It is undisputed that Plaintiff is Muslim.  Plaintiff has failed to show, however, that he was deprived of his right to practice Islam. Although Plaintiff was not allowed to receive a prayer rug at the BCJ, Plaintiff was allowed to pray using his "prayer towel." Plaintiff admits that he was able to pray using a towel, stating that "[a] towel would work. A towel worked just fine." Pl.'s Dep. at 33 (Doc. 59). As such, Plaintiff was sufficiently accommodated by being allowed to pray on a prayer towel.

Plaintiff claims that Defendant Allen took his prayer towel and refused to return it. Plaintiff admits that Defendant Allen took his towel marked "prayer rug" in order to clean it. When the towels were returned after being cleaned, the labeled prayer towel was given to another inmate and Plaintiff received an unmarked towel.  Plaintiff was able to trade the unmarked towel for his labeled towel. Plaintiff did not miss any prayer as a result of his towel being taken to be cleaned. Id. at 58. Moreover, "[t]he fact that the alternative program offered did

not work seamlessly at times does not render the [alternative program] unconstitutional." Shepard v. Peryham, 657 F.Supp. 2d 1331, 1352 (S.D. Fla. 2009).

Plaintiff has also failed to present evidence to support his claim that he was deprived of religious books by Defendant Duncan. Plaintiff admits that he did not specifically request such materials from Defendant Duncan. Plaintiff states instead that he merely "heard" another officer tell and inmate that such books were not allowed, testifying that "at one point, I had tried to get religious books…I--I heard her tell--it wasn't her, but the lady up under her had told a guy that he couldn't have his book and that if he didn't get it sent home, she was about to destroy it, okay?" Pl's Dep. at 26 (Doc. 59). As such, Plaintiff has failed to establish a genuine issue of material fact in support of his claim against Defendant Duncan for failure to receive religious books.

Plaintiff's final claim alleges that Defendant Nunn refused to allow Plaintiff to substitute his breakfast tray containing pork with a pork-free breakfast tray. Plaintiff has failed to establish a genuine issue of material fact to support this claim because the evidence shows that Defendant Nunn was not aware of Plaintiff's dietary needs at the time. Plaintiff's claim against Defendant Nunn concerns a single incident immediately after his arrival at the Wilcox County Jail. Plaintiff has testified that he did not inform Defendant Nunn before or after the incident that he was Muslim or that he was prohibited from eating pork. Pl.'s Dep. at 101-103 (Doc. 59). Defendant Nunn maintains that had Plaintiff informed Defendant Nunn of his special needs, he would have been accommodated by the kitchen staff with a pork-free tray. Nunn Dep. (Doc. 52-1).

Moreover, "Even if [Plaintiff] occasionally received meals that did not comport with his religious tenets, his First Amendment rights were not violated." Watkins v. Trinity Services Group Inc., 2006 WL 3408176, 6 (M.D. Fla. 2006) (citing Rapier v. Harris, 172 F.3d 999, 1006) (7th Cir. 1999) (infrequent unavailability of a non-pork tray did not constitute more than a de

minimus burden on plaintiff's free exercise of religion). A single instance of receiving a tray with bacon on it does not amount to a significant burden on Plaintiff's right to practice his religion.

In the absence of evidence that Defendant Nunn was aware of Plaintiff's religious needs or that Plaintiff's right to practice his religion was burden in any meaningful way, Defendant Nunn is entitled to judgment as a matter of law.

## CONCLUSION

Because the evidence in the record shows that Plaintiff failed to exhaust his administrative remedies regarding his Ramadan and excessive force claims, and because Plaintiff has failed to create genuine issues of material fact to support his claims that he was denied his right to practice his religion, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 2nd day of August, 2012.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge